IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00237-PAB-MJW

ADDISON INSURANCE COMPANY,
an Illinois corporation,

    Plaintiff,

v.

WILLIAM J. BILL RIPPY, an individual,
CARY STEHLE, an individual,
STEHLE RIPPY PRODUCTIONS, an unincorporated or entity,
LYSTER OIL COMPANY, a Colorado corporation,
KATHLEEN FOOS, an individual,
VALERIE FULLER, an individual, and
DOUGLAS DWIRE, an individual,

    Defendants.
_____

## ORDER
_____

Plaintiff Addison Insurance Company ("Addison") filed this action seeking various declarations regarding its duty to defend and indemnify defendant William Rippy in connection with a separate ongoing state-court action against Kathleen Foos, Valerie Fuller, and Douglas Dwire. Addison also seeks recoupment of the costs already incurred in defending that case. The matter is before the Court on a "Motion to Dismiss, or in the Alternative, Stay by Defendants William J. (Bill) Rippy, Cary Stehle and Stehle Rippy Production" [Docket No. 18]. Jurisdiction is premised upon diversity of citizenship under 28 U.S.C. § 1332 and upon 28 U.S.C. § 2201.

## I. BACKGROUND

### A. <u>Factual Background</u>

This insurance coverage case arises from a state court case pending in the District Court of Moffat County, Colorado (the "State Court Case") in which Kathleen Foos, Valerie Fuller, and Douglas Dwire (collectively, the "State Court Plaintiffs") assert a wrongful death claim against Cary Stehle, William Rippy, and Lyster Oil Company (collectively, the "State Court Defendants"). Although Addison asserts that defendant Stehle Rippy Production is also a party to the State Court Case, *see* Compl. for Declaratory J. and for Other Relief [Docket No. 1] ("Compl.") at 3, the amended complaint in the State Court Case does not reflect that fact. *See* Mot. to Dismiss, or in the Alternative, Stay by Defs. William J. (Bill) Rippy, Cary Stehle and Stehle Rippy Production [Docket No. 18] ("Defs.' Mot. to Dismiss"), Ex. 2. Furthermore, defendants William Rippy, Cary Stehle, and Stehle Rippy Production (the "Movants"), who filed the instant motion to dismiss or stay, noted in their reply that defendant Lyster Oil Company has been dismissed from the State Court Case. *See* Reply in Supp. of Mot. to Dismiss, or in the Alternative, Stay by Defs. William J. (Bill) Rippy, Cary Stehle and Stehle Rippy Production [Docket No. 31] ("Defs.' Reply") at 1 n.1.

In the State Court Case, the State Court Plaintiffs allege that their children – Samuel Hedemark and Christopher Fuller – were killed as a result of the State Court Defendants' negligence in operating and maintaining an oil well and storage tanks on publicly accessed land. According to the State Court Plaintiffs, State Court Defendants' negligence resulted in an explosion that killed the two young men.

Addison issued a commercial general liability insurance policy (the "Policy") to William Rippy. Mr. Rippy submitted a claim for defense and indemnity coverage under the Policy regarding the State Court Case. In response, Addison advanced funds on behalf of Mr. Rippy's defense, but reserved its rights to challenge whether it indeed has a duty to defend and indemnify Mr. Rippy and to seek reimbursement for funds already advanced.

### B. Procedural Background

On February 4, 2008, Addison filed the present action against all of the parties to the State Court Case. *See* Compl. It seeks four declarations regarding its duties under the Policy and reimbursement from Mr. Rippy for the funds already expended on his defense.[1] The first declaration that Addison seeks is that it has no duty to defend or indemnify Mr. Rippy in the State Court Case because that case involves activities not covered by the Policy. Specifically, Addison contends that the Policy only covered Mr. Rippy's excavation business, not the oil and gas operations on which the State Court Plaintiffs base their claims.

Addison's second claim for relief requests a declaration that it has no duty to defend or indemnify Mr. Rippy in the State Court Case because the claims asserted therein arise out of oil and gas operations conducted by a partnership, joint venture, or limited liability company not covered under the Policy. Addison contends that, outside some narrow exceptions, the Policy's coverage does not extend to such organizations

---

[1] Cases such as this, where an insurer brings a separate declaratory action regarding its duties to purported insureds in connection with an underlying action, prior to a judgment in the underlying action, are often referred to as "anticipatory declaratory judgment actions."

3

owned by Mr. Rippy. Addison asserts further that Stehle Rippy Productions, the presumed owner and operator of the oil well and storage tanks, was organized as one of the three excluded organizational forms.

Addison's third claim for relief requests a declaration that it has no duty to defend or indemnify Mr. Rippy in the State Court Case because the claims asserted therein arise out of oil and gas operations conducted by a corporation or other organization that is not covered under the Policy. In an apparent alternative to its second claim for relief, Addison avers that Lyster Oil Company, a Colorado corporation, owned and operated the oil and storage tanks at issue. Regardless of what Mr. Rippy's ownership interest is in Lyster Oil, Addison argues that the corporation is not entitled to defense or indemnity under the Policy.

Addison's fourth claim for relief requests a declaration that it has no duty to defend or indemnify Mr. Rippy in the State Court Case because the claims asserted therein resulted from the escape of pollutants in the form of vapors and fumes from the oil storage tanks. According to Addison, the Policy excludes coverage for any bodily injury that would not have occurred but for the discharge, dispersal, release, or escape of pollutants.

Finally, Addison contends that because it has no duty to defend Mr. Rippy in the State Court Case, it is entitled to recoup the funds already expended in his defense. Accordingly, Addison seeks a judgment reimbursing it for the costs and expenses it has advanced to date in defending Mr. Rippy in the State Court Case.

On March 31, 2008, the Movants filed a motion to dismiss or stay the action before this Court. *See* Defs.' Mot. to Dismiss. On April 18, 2008, Addison filed its

response.  *See* Resp. to Mot. to Dismiss, or in the Alternative, Stay, by Defs. William J. (Bill) Rippy, Cary Stehle, and Stehle Rippy Production [Docket No. 28] ("Pl.'s Resp.").  On April 29, 2008, the Movants filed a reply in support of their motion to dismiss or stay.  *See* Defs.' Reply.

## II. ANALYSIS

### A. Governing Law

The Movants apparently seek dismissal or stay of this case under the general discretion of courts regarding whether to allow a declaratory judgment action to go forward.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("[T]he Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" (quoting *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962)); see also *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).[2]  The Movants argue that this Court is compelled by Colorado state law to dismiss, or at least stay, Addison's action until the State Court Case is resolved.  To support their position, the Movants cite to various cases by the Colorado Supreme Court.[3]

---

[2] Although Addison seeks monetary relief in the form of recoupment for the funds it has advanced on Mr. Rippy's defense in the State Court Case, such an entitlement is tied directly to the declaratory relief it seeks.  Therefore, this action is properly characterized as a declaratory action and this Court possesses broad discretion in deciding whether to entertain it.  *Cf. United States v. City of Las Cruces*, 289 F.3d 1170, 1180-83 (10th Cir. 2002) ("If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit.").

[3] Contrary to the Movants' contention, Colorado law does not forbid suits such as this one.  It merely establishes limits, albeit strict ones, on anticipatory declaratory

5

Movants argue that a federal court sitting in diversity jurisdiction must decide whether to stay a declaratory action pursuant to the strictures of state law rather than federal law. I disagree. Although the Movants contend that this decision implicates substantive law, "[i]t is well recognized that the [Declaratory Judgment] Act involves procedural remedies and not substantive rights." *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). Consequently, federal law guides this Court's analysis of whether a dismissal or stay is warranted. *See id.*; *Western Casualty and Surety Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968).

This rule is illustrated in *Western Casualty and Surety Co. v. Teel*, where an insurer sought a declaratory judgment in a federal district court in Oklahoma regarding its duty to defend in a personal injury case pending in state court. Although an Oklahoma statute banned such anticipatory declaratory actions altogether, the court in *Teel* held that a federal district court acting under the authority granted by the federal Declaratory Judgment Act may retain jurisdiction regardless of state law. *See Teel*, 391 F.2d at 766 (citing with approval *Md. Cas. & Sur. Co. v. Consumers Fin. Serv., Inc.*, 101 F.2d 514 (3d Cir. 1938)); *see also Farmers Alliance*, 570 F.2d at 1386.

In this case, Colorado law, as the law of the forum state in which this Court sits, will govern substantive issues. *See Farmers Alliance*, 570 F.2d at 1386. For example, Colorado law will govern the interpretation of the Policy at issue as well as other matters in analyzing Addison's duties to defend and indemnify. *See, e.g.*, *Mhoon*, 31 F.3d at

---

judgment actions. *See Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 558 (Colo. 1996) ("[A] judgment against the insured in the underlying case is not an absolute prerequisite to the filing of a declaratory judgment action to determine coverage."); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

985; *Farmers Alliance*, 570 F.2d at 1386. Furthermore, Colorado law can be "instructive" in the present exercise, offering an important perspective regarding the propriety of declaratory judgments in the insurance context. *Am. Family Mut. Ins. Co. v. Teamcorp, Inc.*, No. 07-cv-00200-PSF-MJW, 2007 WL 3024446 at *2 (D. Colo. Oct. 16, 2007) (unpublished)

### B. Declaratory Judgment

#### *1. Legal Standard*

"In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2006). The preceding language of the Declaratory Judgment Act creates two separate hurdles that parties seeking a declaratory judgment must overcome. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, there must be an "actual controversy" at issue. *Id.* (noting that the "actual controversy" requirement is tied to the case-or-controversy requirement of Article III of the United States Constitution).

In determining if an "actual controversy" exists, the Tenth Circuit follows the Supreme Court's recent opinion in *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007). *See Surefoot*, 531 F.3d at 1241–47. In *MedImmune*, the Court noted that its previous decisions

> required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive

7

> character, as distinguished from an opinion advising what the law would
> be upon a hypothetical state of facts.

*MedImmune*, 549 U.S. at 127 (internal quotation marks and alteration marks omitted). The Court summarized this position by stating: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Once a district court satisfies itself that an "actual controversy," and consequently Article III jurisdiction, exists, it turns to the second hurdle that a party seeking a declaratory judgment must overcome. This step embraces the permissive language of the Act – that a district court "*may* declare the rights and other legal relations." 28 U.S.C. § 2201(a) (emphasis added). At this juncture, a district court must consider several case-specific factors when deciding whether to exercise its declaratory judgment authority. *Surefoot*, 531 F.3d at 1240. These various "equitable, prudential, and policy arguments" weigh on the Court's discretionary decision to either entertain or dismiss a declaratory judgment action. *MedImmune*, 549 U.S. at 136.

The Tenth Circuit has provided a non-exhaustive list of factors for district courts to consider in this exercise: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative

8

remedy which is better or more effective. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

### 2. Actual Controversy

Neither party contests the existence of an "actual controversy" in this case, nor is there reason to do so. I conclude that the current matter satisfies the Supreme Court's articulation in *MedImmune* for finding an "actual controversy." *See MedImmune*, 549 U.S. at 127. Addison alleges facts that, under all the circumstances, show that there is a substantial controversy between it and the defendants and that their legal interests are adverse. The defendants have an interest in maintaining Addison's presence and financial resources in the State Court Case, and Addison has an interest in expediting its detachment from any commitment in that case.

I also conclude that the issues presented are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Addison continues to incur expenses in the State Court Case, which promise to be more difficult to recoup as they build. Therefore, Addison clears the first hurdle by demonstrating that an "actual controversy" exists in this case.

### 3. Discretionary Factors

Addison identifies four potential grounds for a declaration that it has no duty to defend or indemnify the Movants in the State Court Case: (1) the State Court Case involves a business enterprise (oil and gas) not covered under the Policy; (2) the State Court Case involves ownership by an organization-type (partnership, joint venture, or limited liability company) not covered under the Policy; (3) the State Court Case

9

involves ownership by an entity (Lyster Oil Company) not covered under the Policy; and (4) the State Court Case involves an excluded source of bodily injury or property damage (pollutants).

### a. Whether the Declaratory Action Would Settle the Controversy

The controversy at hand is whether Addison has a duty to defend and indemnify the Movants regarding the claims in the State Court Case. A declaration by this Court would determine whether or not Addison must continue to represent and eventually indemnify the Movants, thereby settling the controversy.

### b. Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue

Various considerations support an expeditious determination of an insurer's liability under a particular policy. For example, "a declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act." *Western Casualty and Surety Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968); *see also Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). Furthermore, the court in *Mhoon* noted that "there is a substantial interest in deciding these issues without undue delay, particularly the question of the duty to defend." *Mhoon*, 31 F.3d at 984 (citing *Metro. Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61 (1st Cir. 1984)). Therefore, because determining the duties of insurers represents an intended and important application of the Declaratory Judgment Act, adjudication by this Court of Addison's claims would serve a useful purpose in clarifying the legal relations at issue in this case.

### c. Whether the Declaratory Remedy Is Being Used Merely for the Purpose of "Procedural Fencing" or "To Provide an Arena for a Race to Res Judicata"

Although the Movants, in passing, accuse Addison of procedural fencing, *see* Defs.' Reply at 3, the record does not support it. As discussed below, preclusion issues arise with regard to several of Addison's claims. However, the instant factor infers a degree of intent that does not appear to be present in this case. Instead, the res judicata issues in this case will be fleshed out in the fourth *Mhoon* factor's command that this declaratory judgment action not interfere unduly with the underlying action.

### d. Whether Use of a Declaratory Action Would Increase Friction Between Our Federal and State Courts and Improperly Encroach upon State Jurisdiction

"[A] federal court will generally not entertain jurisdiction in a declaratory action if the identical issues are involved in another pending proceeding." *Teel*, 391 F.2d at 766. However, as noted above, a federal court is an appropriate venue for an insurer to litigate questions regarding its duties under a policy, even though the federal action implicates an ongoing state court case. *See Mhoon*, 31 F.3d at 983-84; *Teel*, 391 F.2d at 766. The limitation that the fourth *Mhoon* factor places on the federal inquiry is that the federal action may not unduly interfere with the underlying state court action. *See Mhoon*, 31 F.3d at 984. In analyzing whether there is undue interference in this context, there are at least two relevant considerations.

First, due mostly to res judicata concerns, a federal district court should consider whether it will be asked to resolve factual disputes that are material to the ongoing state proceedings. *Mhoon*, 31 F.3d at 984. Under *Mhoon*, a federal district court should stay

or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action. *See id.*

The second consideration in evaluating interference with state court proceedings is whether the federal declaratory judgment action would essentially create a "Catch-22" for the insured. Cases in this district, particularly in the insurance context, have found guidance from the Colorado Supreme Court to be instructive on this issue. *See Addison Ins. Co. v. Maynard*, No. 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2-3 (May 15, 2008) (unpublished); *Am. Family Mut. Ins. Co. v. Teamcorp, Inc.*, No. 07-cv-00200-PSF-MJW, 2007 WL 3024446 at *2 (D. Colo. Oct. 16, 2007) (unpublished). The Colorado Supreme Court in *Constitution Associates* required that an anticipatory declaratory judgment action be independent and separable from the underlying case. *See Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562-63 (Colo. 1996). The "independent and separable" standard precludes an anticipatory declaratory judgment action from unduly prejudicing the insured in the underlying case. *See id.* at 563. Such prejudice would arise if an insured was required to take a position in the declaratory judgment action that would undermine his interests in the underlying case. *See*, *e.g.*, *Constitution Assocs.*, 930 P.2d at 562-63.

Although *Constitution Associates* dealt with an insurer's duty to indemnify under an insurance policy rather than its duty to defend, the case is relevant to the analysis of both. *See Maynard*, 2008 WL 2079143, at *4. Indeed, as the Movants and the Court in *Constitution Associates* note, the duty to defend is easier to trigger than the duty to

indemnify.  *Constitution Assocs.*, 930 P.2d at 563.  However, *Constitution Associates* certainly contemplates that an insurer would be entitled to an anticipatory declaration on the duty to defend issue where it is appropriate, and the "independent and separable" standard is likely to apply.  *See id.* (discussing the impact of a finding regarding a duty to defend on an insurer's duty to indemnify); *see also Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (describing the analysis for determining if an insurer has a duty to defend); *Maynard*, 2008 WL 2079143, at *4.

Therefore, I find the Colorado Supreme Court's "independent and separable" standard to be instructive in this Court's determination of whether the present anticipatory declaratory judgment action will unduly interfere with the State Court Case.  The standard comports with federal declaratory judgment case law which cautions against a federal district court's undue interference with an underlying state court action.  As a result, an anticipatory declaratory judgment action regarding an insurer's duties to defend and indemnify must be independent and separable from the underlying case and not unduly prejudice the insured in that case.

I find that Addison's first claim for declaratory judgment, regarding the type of business covered under the Policy, will not interfere unduly with the State Court Case.  There appears to be little reason why the State Court Case would concern itself with whether the oil storage tanks were part of an excavation business or some other enterprise.  Furthermore, it is highly unlikely that the insured, Mr. Rippy, would have to make assertions in the present case regarding this issue that are contrary to his interests in the State Court Case.

Addison's other three bases for declaratory relief pose a greater threat of interfering unduly with the State Court Case. The second and third claims focus on the ownership of the oil extraction and storage enterprise. These alleged grounds for a finding of no duty to defend or indemnify assert that either Stehle Rippy Production or Lyster Oil Company, rather than Mr. Rippy individually, own and operate the business.

Questions of ownership, and the liability that follows, likely will be material issues in the State Court Case. Furthermore, the ownership issue acquires heightened importance here because the two entities that Addison alleges to be the true owners and operators of the oil enterprise – Stehle Rippy Production and Lyster Oil Company – apparently are not named defendants in the State Court Case.[4] Therefore, the danger that this Court's decision on the ownership issue would interfere with the State Court Case is simply too great to allow this anticipatory declaratory judgment action to proceed.

Furthermore, allowing Addison's anticipatory declaratory judgment action to go forward impermissibly increases the likelihood that Mr. Rippy would be required to make assertions in this declaratory judgment action that are contrary to his interests in the State Court Case. In order to contest Addison's claims regarding the ownership issue, Mr. Rippy may be forced to argue before this Court that he is the true owner of the oil enterprise. Taking such a position could expose him to liability in the State Court Case. Issues of ownership are complex and nuanced. Forcing Mr. Rippy to take a position in

---

[4] Importantly, Addison not only seeks a declaration that it has no duty to defend or indemnify Stehle Rippy Production and Lyster Oil Company, but that it has no duty to provide defense or indemnity coverage to anyone regarding the claims asserted by the State Court Plaintiffs. *See* Compl. at 11.

14

this case could preempt a considered determination of the issue in the State Court Action.

Addison's fourth claim for relief, based on the Policy's purported pollution exclusion, also raises factual questions that are material to the underlying case and that threaten to create a Catch-22 for Mr. Rippy. Addison concedes this point by agreeing to a stay of its fourth claim for relief. *See* Pl.'s Resp. at 2.

### e. Whether There Is an Alternative Remedy Which Is Better or More Effective.

The discussion that tends to dominate the analysis of the fifth *Mhoon* factor focuses on whether the parties could adjudicate the issue in the underlying action. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1188-89 (10th Cir. 2002); *Mhoon*, 31 F.3d at 984; *cf. Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495-96 (1942).

Addison argues that it could not adjudicate its duty to defend in the underlying action. *See* Pl.'s Resp. at 7-8 (citing *Armijo v. Ward Transport, Inc.*, 302 P.2d 517 (Colo. 1956); *Crowley v. Hardman Bros.*, 223 P.2d 1045 (Colo. 1950)). The cases cited by Addison preclude joinder of a defendant's insurance company by a plaintiff. *See Armijo*, 302 P.2d at 518; *Crowley*, 223 P.2d at 1050. Addison has not cited, and I have not found, any case law prohibiting Addison from intervening in the State Court Case and asserting its claims in that context. *Cf. Briggs v. Am. Family Mut. Ins. Co.*, 833 P.2d 859, 863 (Colo. App. 1992) (allowing insurer to intervene in uninsured motorist action "if the insurer believes and can show that representation of its interest is or might be inadequate in an action between its insured and an uninsured motorist" (internal quotation marks omitted)).

However, I find that no support exists for there being a simpler and more efficient resolution of the issues through the State Court Case. The Movants do not argue otherwise. *Cf. Mhoon*, 31 F.3d at 984 (where neither party argued that the insurer could have adjudicated issues regarding coverage in the underlying case, need for federal declaratory action was not obviated and district court could proceed). Furthermore, this Court is an available forum to Addison, and it is entitled to have its case heard here. *See id.* Therefore, although a stay of this action is appropriate, dismissal is not.

## III. CONCLUSION

For the reasons stated above, I conclude that while Addison's first claim for declaratory relief would not unduly and impermissibly interfere with the State Court Case, its second, third, and fourth claims would. Therefore, the fourth *Mhoon* factor leads this Court to find that, at the very least, the latter three claims should be stayed or dismissed. Furthermore, because of the potential inefficiency and the risk of invading the restrictions of the stay, I conclude that the entire case is rightly stayed until the State Court Case is resolved. Finally, because the Declaratory Judgment Act makes federal courts available for actions such as this and there is some uncertainty regarding Addison's ability to litigate the issues in the State Court Case, dismissal is not appropriate. Therefore, it is

**ORDERED** that the Motion to Dismiss, or in the Alternative, Stay by Defendants William J. (Bill) Rippy, Cary Stehle and Stehle Rippy Production [Docket No. 18] is GRANTED in part and DENIED in part. It is further

**ORDERED** that this case shall be stayed pending the resolution of the underlying State Court Case in the District Court of Moffat County, Colorado. It is further

**ORDERED** that plaintiff Addison Insurance Co. shall file a status report with the Court within 10 days following any action in the State Court Case that resolves that case. The status report shall detail what has occurred and how it impacts the instant case.

DATED March 18, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge